v. United States v. Terrence. Mr. Terrence moved to withdraw his guilty plea before sentencing, a time when this court directs that such motions should be liberally granted, and he did that because a change in law established that he is actually innocent. Neither the district court nor the government dispute that an actual innocence claim is a valid basis for withdrawing a guilty plea under Rule 11, and neither of them disagree with the fact that under the analysis of the Montour decision from the Quebec Superior Court, Mr. Terrence is actually innocent. Instead, the district court rejected Mr. Terrence's motion solely because it found that the Quebec Superior Court got Canadian law wrong. But Canadian law is critical to this case, and there should be no question that a respected Canadian judge, like Justice Sophie Bork, who has been on the bench for 20 years, would know Canadian law better than an American judge who specializes in American law. But I mean, this is a case in which the government of Canada took a different position, right? It did, Your Honour, but the government of— I mean, that's worthy of consideration as well, is it not? Or do you think that that's irrelevant? I think it's a factor that can be considered, but the most powerful evidence of what a foreign government's law means is what its courts say, and that's true in the United States as well. But the process—I mean, correct me if I'm wrong, but it seems to me that as with interpreting state law, the federal court is supposed to conclude what the foreign jurisdiction's law is based on what the highest court in the land has said, and if the highest court in the land hasn't said, then you look to other sources, including lower courts. Is that fair? Yes, Your Honour, that is fair. If the Canadian Supreme Court had spoken on this question, that would be definitive. But this court has to figure out what would the Canadian Supreme Court do, and the best evidence that you have is what Canadian lower courts have said. And here you have two— We have two lower courts issuing non-binding decisions, if I understand them correctly. So what weight are we supposed to give to those? These are trial court decisions. Well, they're the best indication you have, Chief Judge Livingston, as to what Canadian law means, and they are binding in a sense. Judge Kane—in the Kane case, Judge Royer explains Canadian courts apply a doctrine there called horizontal stare decisis, which means that like once a district court in one district makes a ruling, that ruling is binding as a general matter on all other district courts within that—on all district judges within that—all justices within that district. It wouldn't apply elsewhere, but here all that really matters is Quebec. And the reason for that is the question here is concerns the Mohawk rights, and the Mohawk have a reservation that Mr. Terence lives on that straddles the U.S.-Canadian border into Quebec. As a practical matter, you're not going to see Mohawks bringing things into Canada through another province. It all really occurs there. The trial court ruling is on appeal? Yes, Your Honor, it is. And if the higher court reverses, what effect does that have on this case? I think part of it would be a question of timing, Your Honor. It may take a very long time before this case reaches the Canadian Supreme Court and is decided. In a case like Kane, the justice there issued acquittals for the five Mohawk defendants in that case rather than waiting for the appellate process to run its course, and I think this court should do the same. Well, but— No, but what I'm asking—all you told me is it would take time, and I'm asking you what would be the significance of a reversal? If there were a reversal, it would mean that the actions that Mr. Terence took would have been criminal. That what? That those actions would have been criminal. The only reason is— And what would the effect of that be on this case? If the Canadian court were to rule more promptly, then— Promptly or not. I mean, at some point they're going to rule. Yes, Your Honor, but if Mr.—as in Kane, where those defendants have been acquitted already, if the Supreme Court were to later reverse, I mean, I guess that's within that defending case, but my hope would be is that this court would say that Mr. Terence had the right to withdraw his plea, and then upon— Even if there's a reversal? Well, Your Honor, if it's reversed, then it's no longer—then there would no longer be a fair and just reason to allow the withdrawal, but you must make that decision at this point in time. What—as of now— Well, let me get to the bottom line. Should we wait for the conclusion of the appeal? No, Your Honor, I don't believe so. I think that could take several years, and it's not fair to leave Mr. Terence in that sort of jeopardy for so long. He's, in effect, serving his sentence right now, and that sentence will be complete, you know, once he completes his supervised release, which will happen before the Canadian Supreme Court would ever rule on this. I think he's entitled to a judgment now. Well, but, I mean, you'll get a windfall. I mean, so if the intermediate appellate court or the Canadian Supreme Court come out the other way, the way the government of Canada is arguing, then your client would basically get a windfall that the folks in Kane wouldn't, right? Their convictions would be reinstated. Well, as of now, they're not serving his sentence because they've effectively been acquitted. Mr. Terence is serving that time. Well, but they would—that order of the district court in Quebec would be vacated, right? Yes. Yes, Your Honor. So, I mean, they're in different postures, but you're going to get—your client would get a windfall if the appellate court comes out the other way. Also, your client is not in prison. He's on supervised release right now, right? It's true, Your Honor, but those are restrictions on freedom of the law. I'm just saying it's less intrusive than prison. Absolutely. And he didn't—there was no restitution ordered in this case, right? Right, because there was no victim, Your Honor. I thought Canada was the victim. I mean, there's forfeiture. Yes, Your Honor. The forfeiture took place and there was a $350,000 fine, which my client is in the process of paying, so those are significant consequences for him. No, they are, but those can be easily remedied. They can be—he can— Yes, Your Honor. They can cut him a check. Well, Your Honor— Or they can just—they can stop—he can stop paying, I suppose, between now and when the appellate court decides. Well, Your Honor, Judge Sullivan, when—that was before Judge Scallon. He didn't decide to hold that case off and delay sentencing until the Canadian cases ran its course and went up to—this is an issue that will ultimately go to the Canadian Supreme Court, and that matter may take years. And rather than wait for that, Judge Scallon went ahead and went to sentencing, and that's why we're here now. We can only appeal the sentence that's been imposed, and as of right now, you can only make your best guess as to what the Canadian facts before you and what you now know. Should we even make that guess, or is it your position that as of the time that this case arose in the district court, he was entitled to relief? Well, we believe he was entitled to relief at the moment that he filed his motion withdraw his guilty plea because at that point, the Montour decision had come down. The law had changed. Well, that's what I thought you were saying, but a minute ago you said we should make our best guess, but now it sounds like our guess is irrelevant because the situation at the time that matters was the decision of the lower Canadian court. Well, we believe that at that point in time, that's your best indication of what Canadian law is, is what the Quebec Superior Court says it would be. Well, isn't it more than an indication? Isn't it the only decision that the district court should look at? Yes, Your Honor. I mean, that was all the evidence. The issue would be much trickier. To put it the other way, are you inviting us to make a prediction that the lower court in Canada was wrong and will be reversed? No, Your Honor, because I don't think there's a basis to do that. I didn't think so. Right. No, you make your best assessment. I think Judge Sullivan's point earlier is that you look at what a foreign government's highest court would most likely do, and that is true, and the Canadian Supreme Court has not yet spoken. But your best indication of what a higher court will do is what the lower courts have done, and here you have only two courts that have weighed into this issue and two justices of those courts have agreed that Mr. Terrence is actually innocent. So in that situation, we accept what the lower court did without any further prediction on our part, right? I think you have to, Your Honor, because there's no difference. If there were a split in authority in the Canadian courts, this would be a tougher case, but here there's none. But your view is that a rogue trial court in New York or Wyoming would, if there's no other case in that court, that a federal court interpreting Wyoming or New York law has to follow that because that's the only law in town. That's what you said a minute ago. That wasn't the case, that the court could consider other things. The real inquiry is whether or not the highest court in the land would conclude this, the highest court in the jurisdiction would conclude this. That's true, Your Honor, but here we have two courts that have looked at it, and if by any stretch, what Justice Bork did is not go rogue. She spent three years building an enormous evidentiary record. She spent another year carefully reviewing that record, and she wrote a 441-page opinion. And so, I mean, you judges look at review lower court decisions all the time, so you know better than most people just how extraordinary that is. But she was incredibly detailed. And Judge Scullin, in rejecting her analysis, didn't choose lines, and he only addressed her decision with respect to Aboriginal rights. He did not address her argument about the covenant chain at all, where she had held that under the treaties, this covenant chain treaty, which is an overarching meta-treaty, the Canadian government had an obligation to meet and confer with the Mohawk before imposing excess taxes. We've read the opinions, and the long one, too. But I guess my question is we don't get to certify to the Canadian Supreme Court the way we would if it were a state Supreme Court, right? Right, Your Honor. You've said several times this could take years. What's your basis for saying that? I just speak with Canadian counsel. Canadian legal appellate process goes slower than it does in the United States. But even within the United States, to take a matter from the district court all the way through to completion at the U.S. Supreme Court would take a few years. What is the impact of the fact that your client entered into the plea agreement knowing that this issue was percolating in the Canadian court? I mean, the plea agreement, the judgment issued in November 2023, three months after the guilty plea. So this was something that your client assessed when he made that decision.  I mean, it was something that was assessed, but as the government notes, this was a novel decision from Justice Bork that broke with prior precedent. And so that's what gave this issue traction, and that's what gives him her decision is what gave this issue traction is why he moved to withdraw his guilty plea. A similar argument was raised in the Ninth Circuit case. I forget the name. Asencio, well, anyway, it's in our case. But the Ninth Circuit said, no, you're not obligated to bring a motion to dismiss raising the argument before a case has ultimately ended up being decided. And here, you know, Mr. – it was sort of a side issue within this case, but Mr. Terrence did raise this issue with his prior counsel and was told that if the Canadian decision comes out your way, you can move to withdraw your guilty plea. And he thought that he would have this absolute right to do that, and when the decision came down, he thought that right would be automatic. His counsel said, no, no, we have to file a motion. These motions are liberally granted, but I can't guarantee you it will happen. But so Mr. Terrence was aware of this, but he also believed that if the Canadian decision was in his favor, he'd move to withdraw his guilty plea, which is exactly what he did. I'm still trying to be clear of your position. Is it that we should reverse because of what the lower court ruled or that we should make – we should look at the lower court decision and also make our prediction of whether that decision will stand? Well, Your Honor, I think you should look at the lower court decision. Like I said, I think the issue would be trickier. Well, of course we're going to look at it. There's no question we're going to look at it. The question is do we only look at it or do we also make a prediction whether it might be reversed? I think you only look at it because it's the only decision that's out there. That's what I thought you were saying. You're right. Well, I mean, and I say only because it would be a more complicated question if there were courts that had come out the other way. But here all the Canadian courts are pointing in the same direction. You've got – you have Montour case, you have the Cain case. They both say that Mr. Terrence is actually innocent. And so the government may raise counterarguments, but it really shouldn't be the role of this court to go in and start second-guessing whether Canadian courts applied precedent correctly. I mean, this court looked at that issue in the Esso Exploration case, which cited its own opinion in PEMEX, and it said whether a foreign court applied its own precedent correctly is, quote, emphatically not for U.S. courts to say. Yeah, yeah, but those are enforcement actions. There's a distinction, it seems to me, in enforcing a judgment where a foreign court has said a particular thing, even if it's a misinterpretation of its own law, and our determination whether under American law there was a fraud under the wire fraud statute. Here it's a different inquiry. We're not enforcing a judgment. Well, Your Honor, I think it becomes a complicated question. It is largely the same. It's showing a level of disrespect to a foreign judge's interpretation of foreign law. And look at how this has impacted things on the ground. You have the Mohawk tribe filing an amicus brief in this case saying this has kind of created havoc. It's a cross-border reservation. Trade is constantly going back and forth. The Canadian government is aware of the Montour decision and the Cain decision. It's not collecting taxes. The Mohawk have been told, you don't owe these taxes in Canada, but now they have to be afraid that, well, if we don't pay these taxes that Canada is not entitled to, we could be criminally prosecuted for a felony in the United States. I mean, that's bizarre. If Canada has a right to recognize the Mohawk's rights, what role does the United States play in saying that if you exercise these rights in Canada, you're penalizing Canada, and that Canada becomes a victim when Canada doesn't think it's a victim, and the U.S. is going to charge that as a felony. It's entirely inappropriate. Thank you.  Good morning, judges. May it please the court. Alexander Wentworth Ping on behalf of the United States of America. The judgment against Kerry Terrance and the denial of his motion to withdraw his guilty plea should be affirmed for three reasons. First, the defendant's appellate waiver precludes this appeal. Second, even if not waived, the district court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea because a nonbinding trial court decision in Canada does not constitute a marked shift in governing law and is therefore not a fair and just reason to permit withdrawal. Third, the defendant's motion to withdraw was untimely and an independent basis to deny the motion. The defendant, while represented by competent counsel, entered into a plea bargain with a waiver of appeal with full knowledge of open legal issues in Canada and did not file a motion to dismiss. He now seeks to relitigate those issues, claiming that he is now legally innocent based on two trial court decisions in another jurisdiction. But your view is it's fatal that because he waited until after he had a decision from a court to make this motion? In other words, if the decision had come down immediately after the plea and then he had moved to withdraw his plea, you'd say that he was barred or not barred at that point? If the timing of the motion to withdraw was closer in time to the plea, Judge, the government's argument as to the timeliness of his motion would likely not be appropriate. But as to the merits of it... Which example are you talking about? From the time of the plea to the motion to withdraw or the time from the Canadian decision to the motion to withdraw? Both, Judge, but perhaps more appropriately, the time from the plea itself to the time when the defendant moved to withdraw. And why is the Canadian decision quite relevant? Well, of course, the government recognizes that the defendant argues that that decision was particularly relevant to asserting his rights. Is it relevant or not? It is relevant, Judge, but that's not the standard. If it's relevant, what was the delay from then to the motion to withdraw? What was that interval? Excuse me, I'm sorry, Judge, I don't follow. Since you just said it's relevant, I'm asking what's the interval from that decision to the motion to withdraw? That was four months, I believe, Judge. And are you saying that's unreasonable? Yes, Judge. How long was that opinion? The long-yield decision, Judge, that was obviously very lengthy and over 300 pages. I thought the record said even 400, but in any event, long. I believe, actually, the appendix to that decision put it over 400 pages. Yes, Judge. And you think the time of a competent lawyer to make an examination to see whether that gives him relief should have been done in less than four months? In this particular instance, Judge, yes. And the reason for that is because the defendant – In the first month, just to read it, wouldn't it? Judge, the distinction here is, in particular, that all of the arguments that were elaborated in that decision were briefed for over a year and a half at that point. Yes, but he's not trying to withdraw because he's got arguments. He's trying to withdraw because he's got a favorable decision. Right, but at the same – the arguments are the same. And what I think is persuasive in – You don't think it's better to go into a court and say, Judge, I've got a decision of a Canadian court. You can just go in and say, Judge, I've got some good arguments that cut my way. That may be, Judge, but this particular –  I understand that that decision is relevant and may make the defendant's arguments more persuasive. That said, at the time of his guilty plea, he made a knowing and intelligent waiver of his right to appeal those arguments and, in fact, did not assert any of those arguments because – But I just want to take that to its logical conclusion then. So everything you just said is true. And so if the Supreme Court of Canada two weeks later said, oh, by the way, there is no tax duty owed to the Mohawk Nation, your view is that he would still be bound by that appeal waiver? Yes, Judge. And the reason for that is because there is an interest in finality of judgments. There is strong interest in not increasing the volume and resolving cases. And certainly in that instance, the defendant may seek to assert or withdraw his guilty plea, and that could be resolved on the district level, but it would not be able to be appealed to this court. And that is because, as the appeal waiver, as this court well knows, is a bargaining chip that is used by defendants to negotiate with the government. But wouldn't a decision of the high court mean that he was legally innocent, that he had not committed a crime? If the Supreme Court of Canada had rendered such a decision, I think the government is prepared to acknowledge that that would constitute a marked shift in the law. So would that fit within a miscarriage of justice exception then? I know that this court has considered that as one potential alternative circumstance in which a guilty or an appellate waiver might not be acknowledged. That particular instance is not the case here, and that is because both the defendant made open court acknowledgements of his guilt at the time of the guilty plea, signed a plea agreement, and made an intentional choice on open legal issues that he was aware of for several years. Isn't the difference between a decision, a definitive ruling of the high court of Canada, and the fact of a trial court decision, isn't it about the definitiveness of the statement of Canadian law that is relevant to whether the miscarriage of justice exception applies? Yes, Judge. The definitiveness of that statement, and we do not have the Supreme Court of Canada rendering any opinion on this issue, except for the binding Supreme Court precedent that the Attorneys General of Canada and Quebec have asserted in their appeals. And I would note, as to the Logan Cain decision, I understand that that has also been appealed and has been suspended pending the intermediate appellate court in Canada's decision on the Montour case. Do you have any insight as to what your adversary said was that it would take years? Do you have any sense as to the timetable for this to get resolved by an appellate court? I do not, Judge, but what I can tell you is that I do not believe that the Montour case has been fully briefed. I believe that it is not even under judicial consideration at this point, and there is no clear timeline for when that decision would be rendered. Are you saying that if the Canadian Supreme Court has affirmed the lower court decision, a week after the guilty plea, he still could not withdraw his plea? No, Judge, I am not saying that.  I am not saying that. Because in that case, the appeal waiver would not have barred a withdrawal, correct? At the district court level, it would not have barred a withdrawal based on a the government would acknowledge that that situation would be a fair and just reason for withdrawal. If that is so, the appeal waiver is not what governs this case. The question is, I guess, the four-month delay. Well, there are two questions. Is the four-month delay throwing him out of court? And is the lower court case in Canada one the district court should now defer to? As to the first point, Judge, I believe the defendant has raised the case of United States v. Ortega-Acanio, a Ninth Circuit case, which we understand to be very distinguishable from this case. Because in that case, at the time of the defendant's plea, the Ninth Circuit had actually precluded the defendant in that case from asserting any type of argument that became his grounds for withdrawal. And in that case in particular, the delay was based on stipulations of continuance between the parties. None of that was agreed to here. And indeed, the defendant wasn't barred in any way from asserting his rights prior to pleading guilty and prior to the decision in Canada. I'm not sure. Maybe you've answered my question, but I'm not sure. So let me try again. We've established, I think, your position that if the Canadian Supreme Court had affirmed a week after the plea, it could have been withdrawn. Yes. The plea waiver would not have barred withdrawal. Would not have barred a motion to withdraw at the district level, yes. If the Canadian Supreme Court affirmed four months after the plea, could he have withdrawn? There is no hard and fast rule about the timeliness of a motion to withdraw. All right. So then that's just a question of reasonableness for us. Yes. All right. So then we get to, I guess, the last question. Why can't he withdraw when a Canadian lower court decides he hasn't committed a crime? I think going back to the state law analogy, Judge, that the government acknowledges that that would be persuasive authority, just like any other non-binding decision.  A non-controlling type of decision. What is in that case? The government, as we sympathize with our Canadian attorneys general, argues that actually the binding case law in Canada is the Vanderpeet test and the Supreme Court of Canada's decisions there. And those were, in fact, what was followed in the district level here. And by the way, the denial of the motion to withdraw, as well as the deference to a foreign court, is reviewed for abuse of discretion. The district court considered these arguments at the time of the defendant's motion to withdraw, as well as his co-defendant's motion to dismiss, on substantially the same grounds. But if even a year from now the Canadian Supreme Court accepts that no crime was committed, that could happen, right? It could, Judge, yes. In which case the government, our government, says that's just too bad. We will have successfully committed somebody for a crime that isn't a crime. Judge, that's part of the nature of plea bargaining. And there is an open legal question. And as this court and other courts, other sister courts have acknowledged, there are assertion of rights that occur on appeal, and that there could be shifts in the law that occur after a defendant pleads guilty. And the appeal waiver... Including that there was no crime at all? When you say shifts in the law, does the shift, those shifts include a determination that there was no crime? I think there are plenty of instances, Judge, where there may be cases where things have, a shift in law has changed. What, for example, different types of crimes and predicate crimes are eligible for prosecution. And this may be just like those. I have a couple of questions. I mean, first of all, there was no restitution here. The whole theory of the case was that the Canadian government was deprived of taxes, right? Yes, Judge. And so why was there no restitution to the Canadian government? To my knowledge, Judge, the Canadian government did not actually submit or seek a restitution. Does that support an interpretation that there is no tax due to the Canadian government, based on the fact that these are Mohawk Nation individuals? No, Judge. The different victims, in any case, may seek restitution or not. And if they seek a claim of restitution, that does not necessarily influence whether or not the defendant is guilty of a crime. And in fact, Judge, as to the Logan Cain case that came up after the defendant filed his initial brief, I think that that speaks to the fact that the Canadian government continues to prosecute these types of cases, even after the Hunter Montour case. And the Canadian government in other provinces in Canada continues to assert its rights as to excise taxes being applied to all citizens, whether they're Indigenous or not, as this case remains on appeal in Canada. Well, do we defer to the fact that the lower court in Canada made a ruling, or do we, as you just invited us, defer to the fact that Canadian prosecutors are still prosecuting? Judge, I would ask this court to defer to the Supreme Court of Canada's decision, and in particular the Vanderpete test that was elaborated and argued by the Attorneys General in Canada, and the government of the United States agrees with those arguments. Does that answer your question? Yes, it does. And so what you're ultimately saying, I guess, is the lower court in Canada made a decision in conflict with Canadian Supreme Court decisions. Yes. That's your view. They're just wrong. Correct, Judge. We believe that the district court decision in Long Hill is very likely to be overturned in the intermediate court or ultimately in the Supreme Court of Canada. One more question. I just want to make sure I understood your argument. You had said that if the Canadian Supreme Court had ruled in favor of the defendant here right after the guilty plea, that it would have been okay, then, to make a motion to withdraw the plea. As to the timeliness argument, Judge, the timeliness of – that would – the government acknowledges that that likely would be a fair – a marked shift in governing law. Yes. So it wouldn't be untimely, but it would still be barred by the appeal waiver? It would still be barred by the plea agreement? Yes. Let me be clear. I think the judge – if that decision – again, this is a hypothetical. This is not what the facts of the record indicate, but we'll go down this road. That would be a marked shift in governing law. And if it was – if the defendant asserted his rights within a week after that decision, the timeliness of his motion would likely have allowed him – the district court would ultimately resolve that issue. But you would still have argued below that the plea agreement barred him from seeking to withdraw his plea? No, Judge. We would have argued that he would have been barred by the appeal waiver from seeking relief in this court for that. So if the district – so he moves to withdraw his plea and the district court denies that motion, he has no relief to this court based on the denial of a motion to withdraw his plea? Yes, Judge, and that is consistent with the case of United States v. Rodriguez in which the denial of a motion to withdraw the guilty plea was found to be a motion that was precluded by an appeal waiver. Well, I'm confused. I thought you said, in answer to my question, if the lower court decision had come down sooner and within a week of the guilty plea, he had moved to withdraw, the appeal waiver would not bar the withdrawal. It wouldn't bar the motion to withdraw in the district court, Judge. We would argue that the appeal waiver would bar him from appealing to this court, and that is because of the – You would not be in the district court saying the appeal waiver bars him. Correct, and we did not assert his appeal waiver at this time. All right, supposing the district court said, gee, I think it does, and he then appeals. You're saying he can't make the same argument to us in that case? Correct. He gets to make an argument in the district court, but he doesn't get to make it here? Correct. Are we bound by the district court? I thought the district courts are bound by us. You're saying it's the other way around? Well, there is an interest in appeal waivers to have a finality of judgment, and that is part of sound plea bargaining process. But it isn't binding in the district court, but it becomes binding up here? Correct. Is there any other rule of law that binds a district court, that lets a district court rule, but all of a sudden precludes us? Well, maybe I'm getting ahead of myself. What I'm suggesting, Judge, is that in that situation, as this court is well aware, there would be an abuse of discretion standard in that situation, and if the district court had abused its discretion in denying a motion to withdraw, then that would have potentially afforded the defendant some rights. But the government wouldn't be asserting—I guess the government would still assert that the appeal waiver would preclude this appeal, even in that hypothetical circumstance, which, again, is not the circumstance that we find ourselves in here today. All right, but you're relying on Rodriguez. Correct, Judge. Which is an unpublished summary order. Yes, Judge, I understand that that's a summary order and does not have presidential effect, but there— And that's a case in which the motion was based on a contention that the defendant was misinformed about his sentencing exposure, kind of like the last case we had. Yes, understood. But those principles, I think, could be persuasive in this court, and the government is unaware of any other binding or precedential case from the Second Circuit, from this court, that has addressed that particular issue. All right, but your view is that a miscarriage of justice, like discussed in Cook, either doesn't exist or doesn't apply here. Correct. Which one? Neither. Neither applies. All right. Thank you. Thank you, Judge. I'd like to address Judge Sullivan's question about restitution, and then kind of return to the other arguments that my opponent raised. The reason there was no restitution here is that Mr. Terrence pled guilty to a conspiracy to commit money laundering. The charge was not for fraud, and there's no victim of a money laundering offense, so there was no restitution owed. The Canadian government would have been hard-pressed to claim that it's a restitution victim at the time of sentencing, because Montour's decision said that you're not a victim at all. Anyway, jumping ahead, the argument about the Vanderpete case in the Canadian Supreme Court applies only to the aboriginal rights issue. Again, the district court said nothing about Montour's alternative holding based on the covenant chain. But Justice Bork addressed Vanderpete, citing the case 146 times, walking through how an evolution of the law can happen that undermines a precedent. Judge Royer acknowledged the same thing is possible in the Cain decision. No, I think we get that, but I guess the question here is that usually what happens when we certify a question to a state supreme court, it's because the highest court hasn't ruled and we're trying to figure out from the tea leaves of lower court rulings what is the law of this state. But what we've got here is a lower court saying that the Supreme Court authority no longer applies because of intervening events. That's a big difference, wouldn't you say? No, I think that's a fairly normal process that might occur, but you don't— That means, just so I'm clear, the federal court that's trying to understand the law is bound by a trial court's determination that a Supreme Court case no longer is good law. Well, a Supreme Court case from 1996 could be modified by the United Nations Declaration Act of 2021.  And that's what the judge found. But you don't have to go down this path at all. You can do exactly what Justice Royer did in Cain and say, I'm going to find actual innocence based on the covenant chain and not look at the aboriginal rights issue at all. I know my time is up. I do want to address the timeliness issue briefly. Rule 11 contemplates a very limited temporal window anyway. You bring these motions between a guilty plea and sentencing, which is only a matter of months. And Congress provided in the rule that in the exceptional circumstance where there is a change of law, you can withdraw your plea. And the Ortega-Asensio case allowed somebody to do that nine months after change of law happened. We saw on page 21 of our brief numerous cases in the same four- to five-month window where it's been allowed. The district court didn't rule on this basis. You'd have to find as a matter of law it was error. It would be error to find—it was necessarily an unconscionable delay, and it's not. And here, even when you evaluate the delay, it's on a sliding scale against prejudice. And the government concedes there was minimal prejudice to it, and it really puts an apostrophe, a punctuation mark on the end of it, is Derek White was charged as the architect of this scheme. They say Terrence was a minor to minimal participant. White was charged, but they dismissed the indictment against him after the Montour and Cain decisions came down. The only explanation for that is they know that they are wrong. Mr. Terrence is actually innocent. Thank you both, and we will take the matter under advisement.